UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL McCARTHY,

               Plaintiff,

     -vs-


CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

               Defendant.

_____

**DECISION AND ORDER**
**No. 13-CV-06467(MAT)**

## INTRODUCTION

Plaintiff, Michael McCarthy ("plaintiff" or "McCarthy"), brings this action under Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "defendant") improperly denied his application for disability insurance benefits ("DBI").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, plaintiff's motion is granted and, the Commissioner's motion is denied.  This action is remanded to the Commissioner for calculation and payment of benefits.

## PROCEDURAL HISTORY

On October 27, 2009, plaintiff filed an application for DIB alleging disability as of July 10, 2006 due to chronic obstructive pulmonary disease ("COPD"), depression, anxiety disorder, and the following left shoulder conditions: impingement, partial tear of

the distal supraspinatus tendon, and acromioclavicular arthropathy. Administrative Transcript [T.] 71, 72-75, 128-131, 156.  Following a denial of that application, a hearing was held at plaintiff's request on June 9, 2011 before administrative law judge ("ALJ") Michael W. Devlin. The ALJ heard the testimony of plaintiff and a vocational expert ("VE").  T. 35-70.

Considering the case de novo and applying the five-step analysis contained in the Social Security Administration's regulations (see 20 C.F.R. §§ 404.1520, 416.920), the ALJ made the following findings: (1) plaintiff last met the insured status requirements of the Act on June 30, 2009; (2) he did not engage in substantial gainful activity since the date of the onset of his alleged disability, July 10, 2006 through his date of last insured, June 30, 2009; (3) plaintiff's left shoulder impingement, left shoulder partial tear of the distal supraspinatus tendon; left shoulder acromioclavicular arthropathy, COPD, depression, generalized anxiety disorder, and alcohol use were severe impairments through the last date insured;(4) his impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404; and (5) plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.157(a).  T. 23.

With respect to finding number four, the ALJ specifically found that plaintiff's arm and shoulder impairments did not cause the inability to manipulate items effectively, nor did plaintiff's

COPD meet the necessary criteria. T 23.  The ALJ further found that plaintiff's mental impairments did not meet the "paragraph B" criteria, causing at least two marked limitations or one marked limitation and repeated episodes of decompensation. T. 24.

Plaintiff appealed the ALJ's decision, and the Appeals Council affirmed on April 26, 2013.  T. 1-7.  This action ensued.

## DISCUSSION

### I.   General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999), quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam).  Section 405(g) limits the scope of the Court's review to two inquiries: whether the

Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions are based upon an erroneous legal standard.  See Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003).

## II.  Relevant Medical Evidence

In October 2006, plaintiff underwent a chest x-ray at Southview Internal Medicine that showed a "right middle lobe infiltrate."  T. 376.  In February 2007, plaintiff saw his treating physician Judith Allen, M.D. ("Dr. Allen") of the University at Rochester Medical Center ("URMC"), who diagnosed him with hypertension, anxiety and alcohol abuse.  T. 317-318.

On April 16, 2007, plaintiff was hospitalized for an intentional drug overdose.  T. 337-341.  Hospital treatment notes reveal that plaintiff was depressed, and that he was clinically assessed with "ethanol intoxication" and "suicide ideation."  T. 341.  In August 2007, Dr. Allen assessed plaintiff's anxiety, hypertension, alcohol abuse and depression.  T. 316.  In November 2007, Dr. Allen reviewed his medications and addressed his chronic pain, "increased stress," and ongoing depression, anxiety, and sleeping difficulties.  T. 313.  She noted that plaintiff would be "delivering for UPS," but commented that he was "[n]ot doing well with pain."  T. 313.  Dr. Allen assessed his anxiety, hypertension, alcohol abuse, and depression, and instructed him to follow up with her in two months.  T. 313-314.

On April 2, 2008, plaintiff underwent a chest x-ray that showed a "nodular opacity" superimposed over his left fifth rib. T. 374. Several days later, plaintiff was treated by Joanne Bergen, P.A. at URMC, and she noted that plaintiff was experiencing head and facial pain, hearing loss, pressure and fullness in the ears and chronic wheezing. T. 308. She reported that he was "[a]cutely ill." T. 309. With respect to plaintiff's lungs, Ms. Bergen noted that "[p]ulmonary ausculation revealed abnormalities in his lower lobes with scattered wheezing." She diagnosed plaintiff with pneumonia and bronchospasm and commented that his smoking cessation seemed to be going well. T. 309.

In May 2008, URMC treatment notes reveal that plaintiff was diagnosed with chronic cough and possible COPD. T. 307. When plaintiff saw Dr. Allen in November 2008, she noted that, overall, he was doing well and planning to return to UPS in December. T. 304. She assessed his ongoing anxiety, hypertension, alcohol abuse, nicotine dependence, and depression. T. 305. Plaintiff was treated by Dr. Allen in February 2009, however, for suspected influenza, dehydration, and possible pneumonia. T. 303. He was subsequently hospitalized for three days with a cough, fever, and acute renal failure, and he was diagnosed with bronchitis, a urinary tract infection, and acute kidney injury and treated with hydration and antibiotics. T. 188-299.

In October 2009, plaintiff was treated by Dr. Allen for severe depression and anxiety, following the loss of three immediate

family members in a brief period, and significant arm pain.
T. 300. She opined that plaintiff was "fully disabled given his
combination of psychiatric disorders and COPD." T. 301.

In May 2010, an MRI of plaintiff's right shoulder showed mild
supraspinatus and infraspinatus tendinopathy. T. 432-433. In June
2010, with a diagnosis of right shoulder impingement and
acromioclavicular joint arthrosis, plaintiff underwent arthroscopic
surgery with subacromial decompression and acromioplasty. T. 427-
429. In September 2010, John P. Goldblatt, M.D. noted that
plaintiff was "making progress" and would continue with therapy,
but he noted that plaintiff was experiencing postoperative cervical
spine pain and left shoulder impingement. T. 421.

Plaintiff underwent an MRI of his left shoulder in October
2010, which showed a "[s]mall undersurface, partial thickness tear
of the distal supraspinatus tendon and moderate acromioclavicular
joint degenerative arthropathy." T. 419-420. In late December
2010, plaintiff was hospitalized for severe pneumonia with sepsis,
a left lower lung field cavity lesion, and acute renal failure.
T. 456-458. The record from his admittance noted his "history of
COPD and pneumonia." T. 456.

Plaintiff underwent chest x-rays on January 4 and January 20,
2011. The first chest x-ray showed left lung opacity at the base,
and the second showed a small density in the left lower lobe
associated with small left pleural effusion. T. 465, 467. Also on
January 20, plaintiff returned to URMC reporting severe right

shoulder pain and fatigue.  T. 437.  His active problems were hypertension, alcohol abuse, narcotic dependency, and fatigue. T. 439.

From February 24 to 28, 2011, plaintiff was hospitalized for the sudden onset of "sharp and stabbing" left-sided chest pain and persistent diarrhea, and he was diagnosed with clostridium difficile colitis, atypical chest pain consistent with costochondritis, resolving left lower lung abscess, and COPD. T. 452-455.  Plaintiff was treated by Dr. Allen in March 2011, and she noted that he was still suffering from chronic pain, depression and anxiety, alcohol and nicotine abuse, hypertension, and interstitial pneumonia.  T. 435.

A May 2011 CT scan of plaintiff's chest showed that, with respect to his previously-seen lung lesions, the left lower lobe opacities had nearly resolved and the opacities in the anterior of both upper lobes had resolved completely.  T. 478.

**Medical Source Statements/Opinions**

According to Dr. Allen's May 11, 2011 Multiple Impairment Questionnaire ("MIQ") form, Plaintiff was diagnosed with depression, generalized anxiety disorder, COPD, alcohol and tobacco abuse, shoulder pain with significant impingement, and hypertension.  T. 468-476.  Plaintiff could sit for one hour and stand/walk for three hours in an 8-hour workday, but he could not lift or carry any weight, and he had significant limitations for reaching with his upper extremities and performing hand

manipulations.  T. 471-473, 482-483.  Plaintiff had left and right shoulder pain that was exacerbated with movement, and he had severe A/C narrowing and impingement in both shoulders.  T. 471.  On this form, plaintiff reported that his medications and physical therapy were not effective.  T. 473.

Dr. Allen opined that plaintiff: could not stand or walk continuously in a work setting; was not capable of work that required activity on a sustained basis; experienced frequent pain, fatigue, or other symptoms severe enough to interfere with his attention and concentration; and  was intolerant of even low work stress.  T. 471, 474.  Additionally, plaintiff: could not kneel, bend or stoop; needed to avoid fumes, gases and dust; and had psychological limitations  T. 475.  Dr. Allen further opined that plaintiff was not a malingerer.  T.  474.  Plaintiff's limitations and symptoms as assessed by Dr. Allen were applicable from 2005 to May 2011. T. 486.

### III. Non-Medical Evidence

Plaintiff, 50 years old, testified that he had a ninth grade education and previously worked as a package deliverer for United Parcel Service ("UPS"), a line cook, a restaurant manager, and a paper packager at Economy Paper Company.  T. 41-45. He stopped working because of back, shoulder, and right arm pain, depression, and breathing issues.  T. 46-49.  He took Lyrica for pain and psychotropic medications for mental health issues, and he used a nebulizer twice a day for his breathing issues.  T. 51-53.

Plaintiff testified that his medications caused him "to lose focus," that he could not "concentrate very long," and that he "[got] loopy."  T. 55.

Plaintiff testified that it was difficult to get out of bed in the morning because of his physical and mental pain.  He testified that, on an average day, he took his daily medications, drank coffee, and took care of his dogs by letting them out and providing water.  T. 56-57.  When plaintiff tried doing laundry, the pain in his arm would start "immediately" when he carried a basket of clothes, and he would become short of breath.  T. 57.  He also testified that he had trouble standing at the sink to do dishes for more than approximately ten minutes.  T. 57.  He could stand for about 15 or 20 minutes before his back started to hurt, and he experienced numbness for 10 or 15 minutes after sitting back down.  T. 58.  Additionally, plaintiff became winded after walking for about a quarter of a block.  T. 59.

Plaintiff testified that he did puzzles, but that he had to stop after about 15 minutes due to blurry eyes.  He also testified that reading "bother[d] [his] eyes" and gave him "a headache."  T. 61.  Plaintiff had one close friend with whom he talked on the phone, and, aside from going to the store, he did not go out.  T. 61-62.  Plaintiff testified that he had panic attacks.  T. 63.  He further testified that: he last consumed alcohol about six months ago; he smoked slightly more than a pack a day; and he did not use street drugs.  T. 63-64.

The ALJ also heard testimony from the VE. T. 65-69.  The ALJ posed a hypothetical with an individual of Plaintiff's age, education, and experience who could perform sedentary work with the following limitations: occasionally lift and/or carry ten pounds and frequently lift or carry less than 10 pound; stand and/or walk for two hours and sit for six hours in an eight-hour work day; push or pull up to ten pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch and crawl; less than occasionally climb ladders, ropes or scaffolds; frequently handle with both upper extremities; avoid exposure to extreme heat and cold, fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; understand, remember, and carry put simple instructions and tasks; interact appropriately with coworkers and supervisors on a consistent basis; have occasional contact with the general public; and consistently maintain concentration and focus for up to two hours at a time.  T. 65-66.  The VE responded that such person could not perform any of plaintiff's past work, but could perform the sedentary, unskilled jobs of a final assembler or an addresser, a type of mail room clerk.  T. 67.  When the ALJ changed the hypothetical to add one limitation, occasionally reach and handle with both upper extremities, the VE identified only one possible job in the general economy, "a surveillance system monitor."  T. 67.

In a letter to the Appeals Council dated April 15, 2012, Dr. Allen stated that she had been treating Plaintiff since

February 22, 2000 and diagnosed him with COPD, shoulder pain with significant impingement, hypertension, tobacco abuse, alcohol abuse, depression, and generalized anxiety disorder. She explained that although she had prescribed various medications for plaintiff's chronic pain and he participated in physical therapy, he continued to experience "severe symptomatology which has hindered his ability to work." T. 489. She opined that plaintiff: could sit for no more than one hour and stand for no more than three hours in an eight-hour day; had limited ability to use his upper extremities for repetitive activity; experienced pain that would interfere with his ability to maintain attention and concentration. T. 489.

## IV. **The Commissioner's Decision Denying Plaintiff Benefits is Not Supported by Substantial Evidence**.

The Social Security Administration has promulgated a five-step sequential analysis that the ALJ must adhere to for evaluating disability claims. See 20 C.F.R. § 404.1520. Here, the ALJ found that Plaintiff: did not engage in substantial gainful activity during the period from his alleged onset date of July 10, 2006 through his date last insured of June 30, 2009; had the severe impairments of left shoulder impingement, left shoulder partial tear of the distal supraspinatus tendon, left shoulder acromioclavicular arthropathy, COPD, depression, generalized anxiety disorder, and alcohol use, but that he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments; was unable

to perform any past relevant work, but had the residual functional capacity ("RFC") to perform sedentary work with certain limitations; and that considering plaintiff's age, education, work experience and RFC, there were jobs that existed in the national economy that plaintiff could have performed.  The ALJ determined that plaintiff was not disabled under the Act during the relevant time period.  T. 28-29.

Plaintiff argues, among other things, that remand is warranted because the ALJ: (1) failed to "give any weight to any evidence in the record or explain how the evidence supports his RFC"; and (2) failed to follow the treating physician rule.  Pl's Mem (Dkt. No. 8) at 9-15.  Defendant responds that the ALJ's RFC determination is proper as a matter of law, and is supported by the "totality of the evidence."  Def's Mem (Dkt. No. 10-1) at 15-18.

## A.    Erroneous RFC Assessment

Here, the ALJ determined that plaintiff had the RFC to perform sedentary work with the following limitations:

> the claimant can occasionally lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds; stand and/or walk at least two hours in an eight hour workday; sit about six hours in an eight hour workday; push and/or pull up to ten pounds;  occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; less than occasionally climb ladders/ropes/scaffolds; frequently reach and handle with both upper extremities; avoid even moderate exposure to extreme heat, extreme cold, fumes, odor, dusts, gases, poor ventilation, and other respiratory irritants; understand, remember, and carry out simple instructions and tasks;

interact appropriately with co-workers and supervisors on a consistent basis; occasional contact with the general public; and able to consistently maintain concentration and focus for up to two hours at a time. T. 25.

"It is well-settled that '[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Hogan v. Astrue, 491 F. Supp.2d 347, 354 (W.D.N.Y. 2007), quoting Social Security Ruling 96-8p, 1996 WL 374184, *7 (S.S.A. 1996), citing Balsamo v. Chater, 142 F.3d 75, 80-81 (2d Cir. 1998). In this case, after setting forth plaintiff's RFC, the ALJ summarized some of the medical evidence in the record, including: treatment notes from Dr. Goldblatt related to plaintiff's shoulder problems, plaintiff's diagnosis of, and treatment for, COPD, and Dr. Allen's May 11, 2011 medical source statement. T. 26. However, the ALJ did not mention plaintiff's long-standing treatment history with Dr. Allen, and did not discuss how the medical evidence to which he referred supported his conclusion that plaintiff could perform a range of sedentary work. T. 26-27.

In support of its position that the ALJ's RFC determination is supported by substantial evidence, defendant points, generally, to plaintiff's medical records from July 10, 2006 through June 30, 2009 (which cover the relevant time period) that show that Plaintiff was treated for hypertension, pulmonary problems, mental

issues (including alcohol abuse), and renal failure.  Def's Mem at 14.  Defendant also points to plaintiff's medical records from December 2009 and 2010 from Dr. Goldblatt (which post-date the relevant time period), which show that Plaintiff was treated for arm and shoulder pain.  <u>Id.</u>  Without elaboration or specificity, defendant claims that, based on those records, the ALJ reasonably determined that plaintiff was capable of performing a range of unskilled sedentary work.  <u>Id.</u>

These records, however, considered separately or in combination, are wholly inadequate to support the ALJ's finding that plaintiff was capable of performing the particular range of sedentary work assessed by the ALJ.  Rather than seek an assessment of plaintiff's functional limitations from an examining or consultative physician, the ALJ assessed plaintiff's RFC by evaluating and interpreting portions of the medical evidence himself.  This was error.  <u>See</u> <u>Zorilla v. Chater</u>, 915 F. Supp. 662, 666-67 (S.D.N.Y. 1996) ("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required.").

Moreover, in arriving at his RFC determination, the ALJ "gives very little weight" to the opinion of the treating physician, Dr. Allen.  T. 27.  The Court notes that while the record contains a psychiatric review technique form, this report was left entirely blank.  T. 383-396.  In determining plaintiff's mental RFC, the ALJ made no mention of this form, nor did he appear to seek further

clarification.  In short, by discounting the only medical opinion that assessed plaintiff's functional limitations, the ALJ clearly relied on his own assessment of plaintiff's functional capacity. Consequently, remand is warranted.  See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) ("Remand is particularly appropriate" where reviewing court is "unable to fathom the ALJ's rationale in relation to the evidence in the record") (internal citation and quotation marks omitted); Naumovski v. Colvin, 2014 U.S. Dist. LEXIS 125286, *21-22 (W.D.N.Y. Sept. 8, 2014) (remanding where ALJ simply summarized parts of the medical record and failed to cite to any specific medical opinion to support his RFC finding); Dailey v. Barnhart, 277 F. Supp.2d 226, 235 (W.D.N.Y. 2003).

**B. Failure to properly apply the Treating Physician Rule**

Plaintiff also asserts that the ALJ's RFC is flawed because the ALJ failed to afford controlling weight to the opinion of Dr. Allen in accordance with the treating physician rule.  Pl's Mem at 9-10.  Defendant responds that the ALJ properly discounted Dr. Allen's opinion because it was not supported by the medical evidence in the record.  Def's Mem at 16-17.

The medical opinion of a claimant's treating physician or psychiatrist will be given "controlling" weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see also Green-Younger, 335 F.3d at 106.  Medically acceptable

clinical and laboratory diagnostic techniques include consideration of a "patient's report of complaints, or history, [a]s an essential diagnostic tool." Id., 335 F.3d at 107.

A corollary to the treating physician rule is the so-called "good reasons rule," which provides that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] gives [the claimant's] treating source's opinion." Clark v. Commissioner of Social Sec., 143 F.3d 115, 118 (2d Cir. 1998), quoting 20 C.F.R. §§ 404.15279(d)(2), 416.927(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" Blakely v. Commissioner of Social Sec., 581 F.3d 399, 406 (6th Cir. 2009), quoting Social Security Ruling 96-2p, 1996 WL 374188, *5 (S.S.A. July 2, 1996). Insomuch as the "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process," (Rogers v. Commissioner of Social Sec., 486 F.3d 234, 243 [6th Cir. 2007]), an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" Blakley, 581 F.3d at 407, quoting Rogers, 486 F.3d at 243.

Here, the ALJ stated that he afforded treating physician Dr. Allen's opinion "very little weight" because it was "not supported by the objective medical evidence in the record." He

also stated that "it appear[ed] that the physical capacity evaluation of the claimant was based largely on the claimant's subjective complaints and allegations."  He also noted that "it appears that [Dr. Allen's May 11, 2011 report] [was] prepared for purposes of supporting the claimant's disability claim."  T. 27. The Court finds that these reasons are unsupported by the record.

As noted above, the ALJ's summary of the evidence is not an accurate portrayal of the record. Dr. Goldblatt's notes from September 2010 state that plaintiff's condition improved after his right shoulder surgery in June 2010, but also reveal that plaintiff had continued and worsening "troubles with his left shoulder." T. 27, 421.  The ALJ's decision does not discuss Dr. Goldblatt's physical exam, but simply characterizes those findings as "fail[ing] to show any significant abnormalities."  T. 26.  The ALJ's conclusion, however, is contradicted by Dr. Goldblatt's September 2010 report stating that plaintiff exhibited paraspinous muscular pain with extension and flexion of the neck, trapezius pain with rotation of the neck to the right, positive Hawkin's and Neer impingement signs on the left shoulder, and tenderness in the left A/C joint.  T. 421.  Dr. Goldblatt found plaintiff to have cervical spine pain with radiculopathy and left shoulder impingement.  T. 421.  Dr. Golblatt also noted that plaintiff's left shoulder pain was worsening and may call for arthroscopic surgery.  T. 421.

Moreover, the ALJ's decision improperly disregards Dr. Allen's medical opinion concerning plaintiff's limitations as based "largely" on plaintiff's subjective complaints.  T. 27.  While Dr. Allen's opinion may have been based in part on plaintiff's subjective complaints, the standard form also prompted her to provide "positive clinical findings" and "laboratory and diagnostic test results" to support her opinions, which she did.  T. 480 at ¶¶ 4-5.  Further, Dr. Allen opined that plaintiff's "symptoms and functional limitations [were] reasonably consistent with [the] physical and/or emotional impairments described" in the evaluation.  T. 480.  Further, Dr. Allen's opinion was based on her long-standing treating relationship with plaintiff, which began on February 22, 2000 and continued "once [a] month" up to her most recent exam on March 30, 2011.  T. 479.

Likewise, the Court finds that even where relevant evidence has been solicited by the claimant or her representative, that is not reason enough to warrant ignoring such evidence.  See Moss v. Astrue, 555 F.3d 556, 560-561 (7th Cir. 2009) (per curiam); Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998).  The record shows that plaintiff received regular treatment from Dr. Allen during the relevant period of July 10, 2006 to June 30, 2009 for various physical and mental impairments, and that Dr. Allen's May 2011 opinion was based on a long-standing treatment relationship with Plaintiff.  Notably, in October 2009, four months after the

-18-

relevant time period, Dr. Allen reported that she considered plaintiff "fully disabled given his combination of psychiatric disorders and COPD." T. 301. In the absence of a medical opinion to support the ALJ's finding that plaintiff was able perform a range of sedentary work, it is well settled that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," which the ALJ appears to have done here. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).

Accordingly, based on the foregoing, Dr. Allen's detailed medical source statement should have been given controlling weight. Dr. Allen identified numerous functional limitations caused by plaintiff's physical and psychological impairments that preclude him from performing the mental demands of unskilled work. See Peck v. Astrue, No. C 09-2600 SBA, 2010 WL 3790597, *13 (N.D. Cal. Sept. 27, 2010) ("[E]ven unskilled work has basic mental demands. Thus, if a claimant is unable to meet those basic demands, he is deemed disabled."), citing Social Security Ruling 85-15, 1985 WL 56857, *4 (S.S.A. 1985). Consequently, remand is warranted.

With respect to points II and III of plaintiff's memorandum of law asserting that the ALJ failed to properly evaluate his credibility and "relied on flawed vocational expert testimony" at step five of the analysis (Pl's Mem at 12-17), inasmuch as the Court is reversing and remanding the matter based on the discussion above, it declines to address those issues.

-19-

V.   **Remedy**

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. Although remand for additional fact development may be appropriate if "there are gaps in the administrative record or the ALJ has applied an improper legal standard" (Rosa, 168 F.3d at 82–3), because the record persuasively demonstrates plaintiff's disability (see Parker v. Harris, 626 F.2d 225, 235 [2d Cir. 1980]), and there is no reason to conclude that the additional evidence might support the Commissioner's claim that plaintiff is not disabled (see Butts v. Barnhart, 388 F.3d 377, 385–86 (2d Cir. 2004), the standard for directing a remand for calculation of benefits has been met.

## CONCLUSION

For the reasons discussed above, defendant's motion (Dkt. No. 10) for judgment on the pleadings is denied. Plaintiff's motion (Dkt No. 7) for judgment on the pleadings is granted to the extent that the ALJ's decision is reversed and the matter is remanded to the Commissioner for the calculation and payment of benefits.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    November 13, 2014
          Rochester, New York

-20-